UNITED STATES DISTRICT COURT                C/M
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
JIN ZHENG,                                                  :
                                                            :
                              Petitioner                    :   **MEMORANDUM**
                                                            :   **DECISION AND ORDER**
              - against -                                   :
                                                            :   16 cv 3368 (BMC)
THOMAS GRIFFIN,                                             :
                                                            :
                              Respondent.                   :
                                                            :
----------------------------------------------------------- X

**COGAN,** District Judge.

Petitioner seeks habeas corpus relief pursuant to 28 U.S.C. § 2254 from his state court conviction for first degree assault, first degree gang assault, and second degree assault, for which he was sentenced to a custodial term totaling 15 years. He was acquitted of attempted murder. The facts will be set forth below as necessary to address each of petitioner's points of error, but to summarize, petitioner was part of a gang of five youths who assaulted a man, Eric Wong, and a woman, Minyue Chen, who were walking down the street. The gang beat both, stabbed Wong repeatedly, and lacerated Chen's leg with a knife before taking Wong's wallet and Chen's cell phone. Wong was seriously injured and required days of hospitalization and surgery; Chen was badly bruised and needed stitches to her leg.

The petition for habeas corpus relief incorporates by reference four of the points that petitioner raised in his state court appeal. All but one is procedurally barred and the other is without merit, and the petition is accordingly denied.

## I. Identification Procedure

### *A. Background*

At a pretrial suppression hearing, an officer testified that she and her partner received a radio run while in their patrol car, reporting that five Asian men wearing dark coats had committed a robbery and were fleeing Southbound on Eighth Avenue in Sunset Park, Brooklyn. Five minutes after receiving the radio run, the officer and her partner spotted four Asian men wearing dark coats, and detained them three blocks from the scene of the attack. The area was otherwise deserted (it was just after 5:00 a.m.). The officers radioed that they had detained four Asian men on the street.

Another officer testified at the suppression hearing that less than five minutes later, he brought Chen over to where the four suspects were detained. This was the officer who had taken Chen's account of the attack; Wong, severely injured, had been transported to the hospital. The officer had confirmed Chen's story with a bystander at the scene prior to transporting her to the show-up. When Chen looked at the four Asian men, they were not handcuffed, and the police did not have their guns drawn. The officers had the men face Chen and she said, "That's them."

The suppression court held that the show-up procedure was not unduly suggestive. It found that because the show up was held less than ten minutes after the first radio transmission of a robbery in progress, and that it occurred three blocks from the scene of the crime, it was permissible for the police to present the four suspects to Chen to see if she could identify them.

During cross-examination at trial, Chen, who had not testified at the suppression hearing, acknowledged that (a) she had been drinking the evening before the attack (although she maintained she was sober at 5:00 a.m. when the attack occurred)); (b) she did not get a good

view of the assailants at the beginning of the attack (although she did identify specific articles of clothing and had an unobstructed view of their faces as they were leaving); (c) the police had asked her to drive around with them to see if they could find the assailants, and, upon presenting the suspects to her, asked her if the suspects were the culprits; (d) she had not provided a clothing description until after she identified the suspects; and (e) she could not identify them in court. However, petitioner's defense counsel did not renew her motion to suppress the identification based on this cross-examination.

On appeal, appellate counsel argued that (a) the suppression court erred in not suppressing the show-up identification based on the evidence presented at the suppression hearing; and (b) Chen's testimony on cross-examination at trial supplied a further ground for suppressing the identification. The Appellate Division rejected both points, the first on the merits and the second as unpreserved and, in any event, without merit:

> [T]he showup identification procedure was conducted in close geographic and temporal proximity to the crime, and it was not unduly suggestive . . . . The defendant's contention that the trial testimony of a female witness established that the showup identification was impermissibly suggestive is unpreserved for appellate review, since the defendant never moved to reopen the suppression hearing. In any event, the defendant's contention is without merit.

People v. Zheng, 127 A.D.3d 890, 6 N.Y.S.3d 288, 289 (2d Dep't) (internal citations omitted), leave to app. denied, 25 N.Y.3d 1203, 16 N.Y.S.3d 525 (2015) (table).

*B. Analysis*

Because the Appellate Division decided on the merits, based on the evidence at the pretrial suppression hearing, that the show-up procedure was not unduly suggestive, its decision attracts the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d)(1). That statute requires petitioner to demonstrate that the state court's

decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  The decision of a state court is "contrary" to clearly established federal law within the meaning of § 2254(d)(1) if it is "diametrically different" from, "opposite in character or nature" or "mutually opposed" to the relevant Supreme Court precedent.  Williams v. Taylor, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519 (2000) (internal quotation marks omitted).  A state court decision involves "an unreasonable application" of clearly established federal law if the state court applies federal law to the facts of the case "in an objectively unreasonable manner."  Brown v. Payton, 544 U.S. 133, 141, 125 S. Ct. 1432, 1439 (2005).  The Supreme Court has made clear that the AEDPA standard of review is extremely narrow, and is intended only as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal[.]"  Ryan v. Gonzales, __ U.S.__, 133 S. Ct. 696, 708 (2013).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter, 562 U.S. 86, 88, 131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 2149 (2004)).  Since Harrington v. Richter, the Supreme Court has repeatedly admonished Circuit Courts for not affording sufficient deference to state court determinations.  See, e.g., White v. Wheeler, 577 U.S. ___, 136 S. Ct. 456, 460 (2015) (quoting Burt v. Titlow, 571 U. S.__, __, 134 S. Ct. 10, 16 (2013)) ("This Court, time and again, has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.'" ).

4

Due process requires the exclusion of identification testimony which is so unreliable as to create "a very substantial likelihood of irreparable misidentification." Manson v. Brathwaite, 432 U.S. 98, 116, 97 S. Ct. 2243 (1977). To be admissible, the court must find either that the identification procedures were not unduly suggestive or that the identification was independently reliable despite any unnecessarily suggestive procedure. See Manson, 432 U.S. at 114; Neil v. Biggers, 409 U.S. 188, 199, 93 S. Ct. 375 (1972); Raheem v. Kelly, 257 F.3d 122, 133 (2d Cir. 2001). If the identification procedure is found to be unduly suggestive, the court must consider whether there is an independent basis for finding that the identification is reliable by considering five factors: (1) the opportunity of the witness to view the suspect at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the suspect; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. See Manson, 432 U.S. at 110-14, 97 S. Ct. at 2251-53; Biggers, 409 U.S. at 199, 93 S. Ct. at 382. In determining whether a show-up is unduly suggestive or whether an identification is independently reliable, the facts must be considered "in light of the totality of the circumstances." Manson, 432 U.S. at 113-14, 97 S. Ct. at 2252; Biggers, 409 U.S. at 199-200, 93 S. Ct. at 382; United States v. Mohammed, 27 F.3d 815, 821 (2d Cir. 1994); United States v. Concepcion, 983 F.2d 369, 377-78 (2d Cir. 1992).

The Supreme Court has recognized that "the practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." Stovall v. Denno, 388 U.S. 293, 302, 87 S. Ct. 1967, 1972 (1967). Nevertheless, as the Second Circuit has noted, "it is now settled law that prompt on-the-scene confrontation is 'consistent with good police work,' and does not offend the principles established in United States v. Wade, 388 U.S. 218, 87 S. Ct. 1926 (1967)." United States ex rel. Cummings v. Zelker,

455 F.2d 714, 716 (2d Cir. 1972) (quoting United States v. Sanchez, 422 F.2d 1198, 1200 (2d Cir. 1970)). In contrast to station house line-ups, "prompt confrontation [is] desirable because it serve[s] to insure 'the immediate release of an innocent suspect and at the same time [to] enable the police to resume the search for the fleeing culprit while the trail is fresh.'" Id. (quoting Bates v. United States, 132 U.S. App. D.C. 36, 405 F.2d 1104, 1106 (1968)). In fact, the Second Circuit has instructed the police to "'make immediate reasonable efforts to confirm the suspect's identity.'" United States v. Bautista, 23 F.3d 726, 729-30 (2d Cir. 1994) (quoting United States v. Valez, 796 F.2d 24, 27 (2d Cir. 1986)). Due to the interest of the police in quickly exonerating a suspect, courts generally permit show-ups that are conducted in close temporal and geographic proximity to the crime. See Francischelli v. Potter, No. 03 Civ. 6091, 2007 WL 776760, at *5 (E.D.N.Y. March 12, 2007); Bratcher v. McCray, 419 F. Supp. 2d 352, 358 (W.D.N.Y. 2006); Brisco v. Phillips, 376 F. Supp. 2d 306, 313 (E.D.N.Y. 2005).

Under the AEDPA's deferential standard for reviewing state court decisions, the Appellate Division's determination that the show-up did not violate due process passes constitutional muster. Aside from the inherently suggestive nature of a show-up procedure that the Supreme Court has noted, the police did not do anything here to increase the likelihood of a positive identification. They did not suggest to Chen in any way that these individuals were the culprits; they did not handcuff them; and they did not have their guns drawn to suggest they were a threat. In the absence of any conduct by the police to suggest to the victim that they had apprehended the assailants other than their mere detention, rejection of this show-up would require rejection of virtually all show-ups under the Constitution, and that is not the law.

As to Chen's testimony on cross-examination at trial about the limitations of her observations, the Appellate Division held that his argument was unpreserved for review on

6

appeal because petitioner's trial counsel had not sought to reopen the suppression hearing. My review of that determination is also limited, but for different reasons.

A federal court should not address the merits of a petitioner's habeas claim if a state court has rejected the claim on "a state law ground that is independent of the federal question and adequate to support the judgment." Lee v. Kemna, 534 U.S. 362, 375, 122 S. Ct. 877, 885 (2002) (quoting Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546, 2553 (1991)). When a state court rejects a petitioner's claim because he failed to comply with a state procedural rule, the procedural bar may constitute an adequate and independent ground for the state court's decision. See, e.g., Coleman, 501 U.S. at 729-30, 111 S. Ct. at 2554; Murden v. Artuz, 497 F.3d 178, 191 (2d Cir. 2007). State procedural grounds are only adequate to support the judgment and foreclose federal review if they are "firmly established and regularly followed" in the state. Lee, 534 U.S. at 376, 122 S. Ct. at 885 (quoting James v. Kentucky, 466 U.S. 341, 348, 104 S. Ct. 1830, 1835 (1984)). If a state court rejects a specific claim on an adequate and independent state law ground, then a federal court should not review the merits of the claim, even if the state court addressed the merits of the claim in the alternative. See Harris v. Reed, 489 U.S. 255, 264 n. 10, 109 S. Ct. 1038, 1044 n. 10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.").

As the Second Circuit has recognized, see Acosta v. Artuz, 575 F.3d 177, 186-87 (2d Cir. 2009) (collecting New York authorities), New York law is firmly settled that if additional evidence is adduced for the first time at trial that might warrant the suppression of evidence,

defense counsel must move during trial to reopen the pretrial suppression hearing, or the additional evidence may not be relied upon on appeal in support of suppression. See e.g. People v. Gonzalez, 55 N.Y.2d 720, 721-22, 447 N.Y.S.2d 145, 146 (1981); People v. Lewis, __ A.D.3d __, 2016 WL 3201586, at *1 (4th Dep't 2016); People v. Badia, 130 A.D.3d 744, 745, 14 N.Y.S.3d 73, 75 (2nd Dep't 2015) ("The propriety of the hearing court's ruling must be determined only in light of the evidence that was before that court … . Since the defendant did not seek to reopen the hearing based on the trial testimony, or move for a mistrial, the question of whether the trooper's trial testimony undermined the hearing court's determination is not properly before this Court"); People v. Carnevale, 101 A.D.3d 1375, 1379 n. 2, 957 N.Y.S.2d 746, 750 n. 2 (3rd Dep't 2012) ("an appellate court cannot rely upon trial testimony to determine the actual merits of a potential suppression issue"); People v. Canteen, 295 A.D.2d 256, 256, 744 N.Y.S.2d 380, 381 (1st Dep't 2002) ("Since defendant never requested that the court reopen the suppression hearing, his claim that his trial testimony established the involuntariness of his statements is unpreserved"). Thus, in holding petitioner's claim unpreserved, the Appellate Division in the instant case applied a firmly established and regularly followed state law rule in determining that petitioner was not entitled to have his trial suppression claim reviewed on the merits (even though the Appellate Division considered the merits in the alternative).

     Once it is determined that a claim is procedurally barred under state procedural rules, a federal court may still review that claim on its merits if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. See Coleman v. Thompson, 501 U.S. at 750, 111 S. Ct. 2565 (1991); Harris v. Reed, 489 U.S. 255, 262, 109 S. Ct. 1038, 1043 (1989). The latter avenue, a miscarriage of justice, is demonstrated in extraordinary cases, such as where

8

a constitutional violation results in the conviction of an individual who is actually innocent. See Murray v. Carrier, 477 U.S. 478, 106 S. Ct. 2639 (1986).

The first avenue, cause for the default and prejudice therefrom, can be demonstrated with "a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or that 'some interference by state officials' made compliance impracticable . . . [or that] the procedural default is the result of ineffective assistance of counsel." Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994) (citing Murray, 477 U.S. at 488, 106 S. Ct. at 2645). However, if a petitioner relies on ineffective assistance of counsel, that claim must itself have been exhausted in the state court. See Edwards v. Carpenter, 529 U.S. 446, 120 S. Ct. 1587 (2000). To adequately exhaust a claim, a petitioner must have "fairly presented" the claim to the state court. Daye v. Attorney Gen. of the State of N.Y., 696 F.2d 186, 191 (2d Cir. 1982) (en banc).

Neither exception to the procedural bar is applicable here. Petitioner never asserted that his counsel was ineffective for failing to move to reopen the suppression hearing. Instead, when the District Attorney pointed out on appeal that he could not rely on evidence at trial to support suppression of the show-up identification, petitioner appealed to the Appellate Division's "interest of justice" jurisdiction to disregard the failure to preserve, which it declined to exercise. Since he has not exhausted any claim of ineffective assistance of counsel, he cannot offer it here as cause and prejudice to excuse the procedural bar.

Nor does this case come close to the standard required to show manifest injustice, as the record leaves little doubt that petitioner was, in fact, one of the assailants who attacked Wong and Chen. Beside the show-up identification, the evidence showed that when the four men, including petitioner, were stopped and frisked by the police minutes after the attack, one of them said to the others, in a Chinese dialect (Fukienese) that he apparently, but incorrectly, thought the

9

officer could not understand, "I still have it, what should I do." The meaning of "it" became clear later when, after the four accomplices were booked, the police discovered a knife hidden in the back of the police car that had transported two of the four (not petitioner) to booking; the knife had one of the accomplices' fingerprints on it and a mixture of blood consistent with Chen's DNA.

Moreover, also during the frisk, another one of the accomplices' phones rang, and the officers allowed the man to answer but told him not to tell the caller what was happening. Using Fukienese, petitioner's accomplice said to the caller, "We are being stopped by the cops, get rid of the stuff." In addition, petitioner's hand was swollen and bloody as was one of the other accomplices. Petitioner also had blood on his shoes, although it was his own, but one of the three accomplices arrested at the same time also had blood on his shoes, which tested positive for Wong's DNA.

Thus, this is not a case of actual innocence. There is no manifest injustice in allowing the show-up identification, and no basis for looking behind the procedural bar.

## II. Sufficiency of the Evidence as to First Degree Assault

At the conclusion of the prosecution's case at trial, petitioner's counsel moved to dismiss the indictment on the ground that there was insufficient evidence to show that he was one of the perpetrators of the assault. She argued that the prosecution had failed to connect him to the crime at all. She pointed out the weakness of the identification; the fact that the police car in which the knife was found after the attack was not the car in which he had been transported to booking; and that the blood on his shoes was his own blood. The trial court denied that motion. Defendants then elected to present no evidence and petitioner's attorney stated that she "renew[ed] the same application" for acquittal, which the trial court also denied.

On appeal, petitioner made a different argument. He attacked only the first degree assault count, and only one element of that count. He pointed out that to reach the jury on that count, the prosecution had to show either that it was petitioner that had stabbed Wong and Chen with the knife, or that, under an "acting in concert" theory, he knew or had reason to know that one of his accomplices had a knife and intended to use it. See N.Y. Penal L. § 120.10 (1) (assault by use of a dangerous instrument). Because there was no proof that petitioner used the knife (indeed, the prosecution had not argued that it was petitioner who had possessed the knife), or that he knew one of his accomplices had or intended to use a knife, he argued that the proof was legally insufficient.

The Appellate Division held that petitioner's "contention that the evidence was legally insufficient to support his conviction of assault in the first degree is unpreserved for appellate review . . . . In any event, viewing the evidence in the light most favorable to the prosecution … we find that it was legally sufficient to prove the defendant's guilt of assault in the first degree beyond a reasonable doubt." Zheng, 127 A.D.3d at 890, 6 N.Y.S.3d at 289.

The Appellate Division's ruling invites the same analysis as to the recognition of state independent and adequate procedural bars set forth above. It is well established under New York law that a general objection at the close of the prosecution's case, not stating specific grounds, will not preserve a claim that the evidence fails to prove a particular element of the crime. See N.Y. Crim. Proc. L. § 470.05(2); Garvey v. Duncan, 485 F.3d 709, 714 (2d Cir. 2007) (general objection not sufficient because, as "New York's highest courts uniformly instruct," to preserve a claim, a defendant must "specifically focus on the alleged error") (collecting state court authority).

11

Although trial counsel's objection was not "general" in that she argued a specific theory of acquittal – that the evidence did not show that petitioner was part of the gang that assaulted Wong and Chen – I see nothing exorbitant about the Appellate Division's viewing the argument that petitioner made before it as unpreserved. In her argument to the trial court, defense counsel referenced the fact that the knife was used by one of the accomplices, not petitioner. However, that undisputed fact was not to show that there was a missing element under the prosecution's acting in concert theory on the first degree assault charge. Rather, it was part of her more general argument that proof was lacking to show that petitioner was part of the gang, and thus all of the charges were legally insufficient. Her theory of insufficiency at trial was lack of adequate identification for all of the counts, not lack of one element – knowledge of the dangerous instrument – under the first degree assault count. Unlike the Appellate Division, the trial court was never asked to consider the evidence as to that single, allegedly missing element of the "acting in concert" theory.

The New York Court of Appeals has considered similar, indeed lesser, discrepancies in the theory of insufficiency advanced at trial versus the theory of insufficiency advanced on appeal and has always affirmed the Appellate Division's finding of non-preservation. In People v. Dekle, 56 N.Y.2d 835, 452 N.Y.S.2d 568 (1982), for example, the defendant moved for dismissal because the evidence did not support a finding that he threatened "immediate" use of physical force to effect a robbery, as required under the statute, because his folding knife was closed; it required two hands to open it; and the evidence showed he only had one hand free. The trial court overruled the objection and instructed the jury that the threat of "immediate" use of physical force was required and that "immediate" should be given its ordinary meaning. On appeal, the defendant argued that the evidence was insufficient to show immediacy because of

the time and distance between the taking of the victim's property and his display of the knife. The Court of Appeals held that the new theory was unpreserved: "To hold otherwise is to encourage gamesmanship and waste judicial resources in order to protect a defendant against a claimed error[,] protection against which requires no more than a specific objection on his part." Id. at 837, 452 N.Y.S.2d at 569. See People v. Sala, 95 N.Y.2d 254, 260, 716 N.Y.S.2d 361, 364 (2000); see also Bowman v. Ercole, No. 09 Civ. 4801, 2010 WL 6620879, at *20-21 (S.D.N.Y. Sept. 1, 2010); Crawford v. New York, No. 07 Civ. 4760, 2010 WL 2651654, at *4-6 (E.D.N.Y. June 28, 2010).

The Appellate Division's conclusion that the argument was unpreserved was therefore consistent with the firmly established and regularly followed principle of New York law that "the preservation requirement compels that the argument be 'specifically directed' at the alleged error." People v. Hines, 97 N.Y.2d 56, 62, 736 N.Y.S.2d 643, 647 (2001) (internal citation omitted). Its procedural bar is entitled to recognition on federal habeas corpus review.

Having so found, petitioner cannot show cause and prejudice to overcome the procedural bar. He never challenged his counsel as ineffective for failing to make his new argument to the trial court so he cannot raise that unexhausted claim here. Nor can he show manifest injustice for the reasons stated above. Accordingly, his point of error is rejected.

### III. Accomplice Statements

Petitioner was tried jointly with his three accomplices who were arrested with him (although two absconded and were tried *in absentia*). He had moved for a severance from his co-defendants, but the only ground he stated was "based on the evidence at the suppression hearing." His request for a severance was denied.

13

As noted above, while the police were frisking petitioner and his accomplices, his accomplices made two statements in Fukienese: (1) the first, from one accomplice to another, was "I still have it, what should I do," apparently referring to the knife that was later recovered from the back of the police car with his fingerprints and possibly Chen's blood on it; and (2) the statement on the telephone from one accomplice to an unidentified fifth person (perhaps the fifth assailant), "We are being stopped by the cops, get rid of the stuff." Both of these statements were admitted into evidence at trial without objection.

On appeal, petitioner contended that the admission of both of these statements was error. He argued that since the robbery conspiracy had ended, the statements were not in furtherance of the conspiracy, and thus the rules of evidence did not permit their introduction. The Appellate Division held that petitioner's

> contention that the Supreme Court erred when it admitted into evidence the statements made by two of his codefendants while they were being searched by the police is unpreserved for appellate review. In any event, while the statements should not have been admitted under the coconspirator exception to the hearsay rule, the error was harmless.

Zheng, 127 A.D.3d at 890-91, 6 N.Y.S.3d at 289 (internal citations omitted).[1]

There are two reasons why I cannot review this claim on the merits.

First, it was presented to the state court as a mere evidentiary error, not as a federal constitutional claim, and habeas corpus relief is only available for federal constitutional claims. "[T]he purpose of federal habeas corpus is to ensure that state convictions comply with the federal law in existence at the time the conviction became final." Sawyer v. Smith, 497 U.S. 227,

---

[1] On appeal, the District Attorney characterized petitioner's claim of error as the failure to grant his motion for a severance. But that is not what petitioner argued. He argued that the accomplice statements should not have been admitted into evidence. His argument was somewhat convoluted; he asserted that his motion to sever on unspecified grounds, made before trial began, was effectively an objection to admission, and thus the objection to admissibility should have been considered preserved. He cited no New York authority for that proposition, and I see nothing exorbitant in the Appellate Division's rejection of it.

14

234, 110 S. Ct. 2822, 2827 (1990). In his brief to the Appellate Division, petitioner nowhere referred to any specific federal constitutional right, nor did he cite any cases applying federal constitutional principles, nor did he make any argument using the language of constitutional analysis. Cf. Daye, 696 F.2d at 191-92 (holding that to satisfy the exhaustion requirement petitioner must "have informed the state court of both the factual and the legal premises of the claim he asserts in federal court"). His point was simply that under the evidentiary rule for the admission of co-conspirator statements, the conspiracy was over when his accomplices made their statement because they had been apprehended, and under New York law, the trial court could not infer, as an evidentiary matter, the existence of a new conspiracy to cover up the crime.

Although petitioner also cited Supreme Court authority – Krulewitch v. United States, 336 U.S. 440, 69 S. Ct. 716 (1949), and Grunewald v. United States, 353 U.S. 391, 402, 77 S. Ct. 963 (1957) – those cases, long pre-dating the Supreme Court's Confrontation Clause analysis under Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004), and its progeny, did not concern any rights under the federal constitution, but merely the appropriate application of the co-conspirator exception to the hearsay rule. Petitioner's argument in citing them was that the federal common law rule of evidence (well before the enactment of the Federal Rules of Evidence, at least) was the same as the New York common law rule of evidence as to the admission of co-conspirator statements. Indeed, petitioner even cited New York civil cases on the issue of the scope of agent admissions once an agency has ended.

There was one reference to "constitutional rights" in petitioner's argument – the point heading alleged that the admission of the statements "violated appellant Zheng's constitutional rights." But no particular right was specified anywhere, neither in the heading nor the argument. A simple citation to some constitutional provision might have adequately alerted the Appellate

15

Division to what provision of the Constitution petitioner was referring, but there was none. He could have referred to the Confrontation Clause, which is often an issue when co-conspirator statements are admitted; or he could have been contending that the evidentiary error was so serious that his rights under the Due Process Clause of the 5th and 14th Amendments had been violated. But he made neither argument, not even indirectly, and I see no way the Appellate Division would have been alerted to consult any provision of the United States Constitution to resolve a question that was presented purely as a matter of the law of evidence.

The manner in which petitioner briefed his argument in the Appellate Division contrasts with the more typical case that raises similar problems, and thereby further illustrates the deficiency. In the usual case, a defendant's trial counsel will object to evidence on hearsay, lack of foundation, or other evidentiary grounds without specifying a constitutional violation, and then on appeal, his appellate lawyer will attempt to add a constitutional dimension to the evidentiary objection. The Appellate Division regularly rejects the attempt to constitutionalize the argument on appeal, holding that the constitutional claim, having not been raised at trial, is unpreserved for appellate review. Then the federal courts, on habeas corpus review, uniformly uphold the Appellate Division's ruling as an independent and adequate state law ground for declining to review the merits of the claim. See e.g. Davis v. Lee, No. 13 Civ. 3827, 2015 WL 1379024, at *4-5 (S.D.N.Y. March 25, 2015) ("it is well-settled law in New York that the invocation of a hearsay objection is insufficient to preserve a Confrontation Clause violation."), (quoting Bryant v. Lempke, No. 08 Civ. 6103, 2010 WL 3063073, at *15 (W.D.N.Y. Aug. 2, 2010)). The instant case did not even get that far; trial counsel made no objection at all to the co-conspirator's statements, and appellate counsel made no constitutional argument on appeal. There is thus not even a hint of a constitutional ruling for me to review.

16

If the petition before me sought to raise a claim under the Confrontation Clause or the Due Process clause, I would find the claim unexhausted, see Daye, 692 F.2d at 191-92. I would then deem it exhausted and procedurally barred, since petitioner never raised either issue in state court, but has no avenue to do so now that the Appellate Division has decided his direct appeal. See Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997); see also Castille v. Peoples, 489 U.S. 346, 350, 109 S. Ct. 1056 (1989) ("It would be inconsistent with [§ 2254(b) ], as well as with underlying principles of comity, to mandate recourse to state collateral review whose results have effectively been predetermined . . ..")); St. Helen v. Senkowski, 374 F.3d 181, 183 (2d Cir. 2004) ("[E]ven if a federal claim has not been presented to the highest state court or preserved in lower state courts under state law, it will be deemed exhausted if it has become procedurally barred under state law."); DiGuglielmo v. Smith, 366 F.3d 130, 135 (2d Cir. 2004) (petitioner's procedurally defaulted claims deemed exhausted where he could no longer obtain state court review because of his procedural default); McKethan v. Mantello, 292 F.3d 119, 122-23 (2d Cir. 2002) (claims deemed exhausted where they were "procedurally barred for not having been raised in a timely fashion"); Bossett, 41 F.3d at 828 ("[I]f the petitioner no longer has 'remedies available' in the state courts under 28 U.S.C. § 2254(b), we deem the claims exhausted.") (quoting Grey v. Hoke, 933 F.2d 117, 120-21 (2d Cir. 1991). However, the petition merely incorporates by reference the arguments he made to the Appellate Division. Since his argument on this point did not allege any specific violation of the United States Constitution, it is not cognizable on federal habeas corpus review. See Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

That brings us to the second reason that I cannot review the merits of petitioner's claim, which is that, as the Appellate Division held, the claim was unpreserved at trial. Petitioner's appellate counsel had argued that trial counsel's general motion for a severance "based on the record of the suppression hearing" was adequate to preserve an objection to the admission of the accomplice statements, but the Appellate Division rejected that contention by finding the evidentiary argument unpreserved. I see nothing exorbitant in the rejection of such a vague trial motion as a purported ground of preservation.

Once again, petitioner cannot demonstrate cause and prejudice to excuse the procedural default, because he failed to raise any claim on direct appeal that his trial counsel was ineffective for not objecting to the admission of the statements, and this is not a case of manifest injustice. Thus, even if petitioner had presented the Appellate Division, and was seeking to present me, with a federal constitutional claim, I would decline to review it on the ground that it is procedurally barred.

**IV. Police Officer Statements**

On cross-examination at trial by petitioner's co-defendants, one of the arresting officers testified that when he placed petitioner and his accomplices against a wall before Chen identified them, one of them – he could not identify which one – said, "I was robbed." The arresting officer further testified that he (the officer) responded by saying, "so you just got robbed and you made a U-turn [when] you saw me and you didn't say anything?" The officer also testified that none of the defendants responded to his rhetorical question. There was no objection raised to any of the officer's testimony.[2]

---

[2] In fact, although, amazingly, it was not referenced in the briefs to the Appellate Division, the prosecutor, prior to the officer's testimony, had advised the trial court that since he (the prosecutor) had not disclosed the "I was robbed"

Despite the absence of any objection to his co-defendants' questions, petitioner nevertheless argued on appeal that (a) the statement, "I was robbed," was inadmissible against petitioner for the same evidentiary reason as his accomplices' other statements, as discussed above, i.e. the robbery was over and so the statement was not in furtherance of the robbery conspiracy; and (b) the officer's disclosure that none of the suspects had responded to his rhetorical question – an "admission by silence" – violated his right against self-incrimination under the Fifth Amendment of the United States Constitution and the corresponding provision of the New York Constitution. The Appellate Division held that both prongs of the argument were "unpreserved for appellate review and, in any event, without merit." Zheng, 127 A.D.3d at 891, 6 N.Y.S.3d at 290.

Petitioner's first argument is not cognizable and procedurally barred for the same reasons as set forth in the preceding point – he never raised a federal constitutional issue on appeal, and even if he had, he had not preserved that issue at trial, as the Appellate Division held. Petitioner's second argument, although presenting a federal constitutional claim, is procedurally barred by the Appellate Division's justified finding of lack of preservation. There is no cause and prejudice to excuse the procedural bar as petitioner never raised a claim of constitutionally ineffective assistance of counsel, and for the reasons already stated, this is not a case of manifest injustice.

---

statement prior to trial because he had not known about it, the prosecutor would not elicit that statement on direct testimony of the officer. The trial court then expressly advised defense counsel to exercise caution in their cross-examination not to bring it out – and defense counsel thoroughly disregarded that advice and asked repeated, open-ended questions which required the officer to disclose not only the statement, but his own response to it.

## CONCLUSION

The petition is denied and the case is dismissed. The Clerk is directed to enter judgment accordingly. A certificate of appealability will not issue as the petition fails to raise any substantial issues. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917 (1962).

**SO ORDERED.**

                                                      U.S.D.J.

Dated: Brooklyn, New York
        July 22, 2016